IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 06-30100-WDS |
| | ) | |
| TYRONE TRAYLOR, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**STIEHL, District Judge:**

The defendant has filed a motion to suppress evidence and statements[1] (Doc. 21) to which the government has filed a response (Doc. 26). The Court held two days of evidentiary hearings on the motion and took it under advisement pending post-hearing briefing by the parties, which have now been filed (Docs. 37, 39). Defendant seeks to suppress evidence and statements that resulted from the his arrest on April 21, 2006. Defendant asserts that reasonable suspicion to stop him did not exist, and therefore, the evidence seized should be suppressed.

**EVIDENCE FROM THE HEARINGS**

On the evening of April 21, 2006, an East St. Louis police dispatcher reported that an unknown female had called 911 to report a man standing in the middle of North 9th Street firing a gun. The 911 tape reveals that a call came into the 911 system, but that the caller hung up. The 911 operator used auto re-dial and got a woman who reported that there was someone in the street shooting a gun, not at anyone, just shooting the gun. The caller reported that the man was wearing a "white shirt with multicolored stripes." The tipster indicated, however, that she was

---

[1] Although the motion seeks to suppress "evidence and statements" there was no evidence presented, nor is there anything in the record to indicate, that the defendant made a statement which he now seeks to suppress.

not going to get any closer to the window to give a further description because of the shooting. The 911 dispatcher sent out a call to the officers in the area to respond to a man shooting a gun, wearing a white, multicolored shirt.

    **1.**        **Testimony of Kendall Perry**

At the evidentiary hearings, the government presented the testimony of East St. Louis Police Officer Kendall Perry who stopped and eventually arrested the defendant. Officer Perry testified that at approximately 3:45 A.M. on April 21, 2006, Officer Gregory was dispatched to a report of shots fired in the area of the 1300 block of North 9th Street, near a night club called "Page Ten." However, Officer Perry answered the call because he was closer and went to assist. Officer Perry heard the dispatcher describe the suspect as a black, heavyset male with a multi-colored shirt. As Officer Perry pulled up to the Page Ten nightclub, a black male flagged down his car and reported that there was a rather heavyset, black male in the front of the club with a multi-colored shirt who was shooting up in the air. Officer Perry testified that he did not suspect the man who flagged him down, or another man standing outside the Page Ten, because they were wearing black motorcycle vests, and did not match the description of the shooter. Neither of the men on the corner was wearing multicolored shirts. The man then pointed to Northbound 9th Street as the direction that the shooter had gone. Officer Perry looked in the indicated direction and saw a man wearing a multicolored shirt, standing in a fairly well-lighted field at the corner, approximately 30 feet from the nightclub. He was wearing a plaid-like, multi-colored shirt, with dark colored jeans.

Perry pulled up to the area, and yelled from his car, "Police Department. Stop." The defendant started walking away from Officer Perry toward an alley. Perry got out of his car, again yelled, "Police Department. Stop," but the defendant did not stop. Perry saw the defendant pick up a small object, and then take something, that appeared to be a black, metal

handgun, and throw it away from him.  Perry heard the object hit the grass and stated that it sounded like it had some weight to it when it landed.  Approximately 10-15 feet from where he had started, the defendant stopped.  Perry told him to get on the ground, handcuffed him and placed the defendant in custody.

Once his back-up officer, Officer Anderson, arrived the defendant was searched and placed into the back of the squad car. The search of the defendant revealed large caliber rounds in both front pockets of his pants.  Using his flashlight, Officer Perry than began searching the area where he had seen the defendant drop the item earlier and found a small Derringer two-shot handgun.  The gun was placed into an evidence bag and taken to the police station.  Officer Perry testified that he was unable to question the men who had been in front of the Page Ten because they were gone by the time he had apprehended the defendant.

### 2. Testimony of Lester Anderson

East St. Louis Police Officer Lester Anderson testified that on the night of April 21, 2006, he responded to a call of shots fired in the area of 9th and Exchange. As he was driving to the area, Officer Anderson heard a call from Officer Perry that Perry had a subject with a gun. Perry's voice sounded as if he were out of breath and, perhaps, running.  When Officer Anderson arrived at the scene the defendant was on the ground in a field at about 9th Street.  The defendant appeared to be sweating and out of breath, indicating to Officer Anderson that he had been running before being taken into custody.  Because the defendant is a large individual, Officers Anderson and Perry both lifted him off the ground and Officer Perry searched the defendant's pockets, finding the ammunition.  Officer Anderson described the defendant's clothing as a multicolored flannel jacket.

After the defendant was detained and secured, Perry searched his person and found eight .44 caliber rounds in his front pants pocket.  Perry then called for backup who will testify that

3

when he arrived the defendant and Perry both appeared to be out of breath as if they had been running. The defendant asserts that there was not probable cause to conduct a *Terry* stop of the defendant.

      3.      **Defendant's witnesses**

The defendant presented Gary Traylor, the defendant's brother, who testified that he had been with the defendant on the evening in question and had seen that his brother was wearing a light blue shirt. Gary Traylor also testified that their aunt Rosie Springer lived near the Page Ten Bar and that the defendant would stay at her home most evenings. To get to her house from the Page Ten, he testified that you would walk across a field and then walk down a path to her house. In addition, he testified that he picked up the defendant's clothing from the St. Clair County Jail after his arrest, and that there were two shirts and a pair of pants, and some personal items with his property. The defendant's booking photos show him in a blue T-shirt with a black hooded sweatshirt over the T-shirt.

At the second day of hearings, the government presented the testimony of Donald Watson, Desk Sergeant for the East St. Louis Police Department. Sgt. Watson testified that the booking sheet indicates that when the defendant was booked on April 21, 2006, he had a hooded jacket, and may have had a separate jacket. He further testified that when photographed a defendant would not be shown wearing a jacket.

## ANALYSIS

Defendant's motion seeks suppression of all evidence and statements that resulted from his arrest on April 21, 2006. In particular, the defendant asserts that the information provided about the person firing the gun did not match the defendant's description, and therefore did not form a basis for the defendant's stop and detention.

The Fourth Amendment to the Constitution protects citizens from unreasonable searches

and seizures.  U.S. Const. amend. IV.  When an officer has a "reasonable, articulable suspicion that criminal activity is afoot" he may conduct a brief, investigatory stop.  *Illinois v. Wardlow,* 528 U.S. 119, 123 (2000) (*citing Terry v. Ohio*, 392 U.S. 1, 30 (1968)).   In determining whether there was  reasonable suspicion to warrant a *Terry* stop, the courts will look to the "totality of the circumstances. . . to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing."  *United States v. Arvizu*, 534 U.S. 266, 273 (2002).

In this case, Officer Perry was at the Page Ten Bar to respond to an anonymous caller who had reported gunfire in the area, and given a description of the shooter.  Part of the description was that the shooter was wearing a multi-colored shirt.  Once Officer Perry arrived, he was stopped by a man in front of the building who stated that the person with the gun had gone towards Northbound 9th Street.

The Seventh Circuit has held: "When law enforcement officers are in communication with one another, the question of whether they possess reasonable suspicion for a stop turns on their collective knowledge."  *United States v. Drake,* 456 F.3d 771, 774 (7th Cir. 2006).  Here, the dispatcher relayed the information about a person shooting outside the Page Ten to officers in the area.  The Seventh Circuit has also stated, "we recognize the particular duty of police officers to speedily respond to emergency situations reported by individuals through the 911 system." *Id.* at 774.  Further "The Fourth Amendment does not require the police to conduct further pre-response verification of a 911 caller's identity where the caller reports an emergency.  Accordingly, an emergency 911 call is entitled to greater reliability than an anonymous tip concerning general criminality." *Id.* at 755 (*quoting United States v. Terry-Crespo,* 356 F.3d 1170, 1176 (9th Cir. 2004)).   The Seventh Circuit has held that "We therefore presume the reliability of an eyewitness 911 call reporting an emergency situation for purposes of establishing reasonable suspicion, particularly when the caller identifies herself."  456 F.3d at

775.

The standard factors courts use to determine whether a tip provides sufficient reasonable suspicion to conduct a *Terry* stop are: (1) the opportunity for the officer to judge the credibility of the informant; (2) the predictive nature of the information concerning illegal conduct; (3) personal observations by law enforcement; and (4) potential danger to human life. *Florida v. J.L.,* 529 U.S. 266, 270, 272 (2000); *United States v. Holloway*, 290 F.3d 1331, 1338-39 (11th Cir. 2002).

The Supreme Court has long recognized that anonymous tips together with additional observation and corroboration by the police can provide the level of suspicion necessary to warrant a *Terry* stop of a suspect. *Adams v. Williams*, 407 U.S. 143, 146-47 (1972). Some tips require additional investigation to determine if the tip is credible. *Alabama v. White*, 496 U.S. 325, 328-29 (1990). Therefore, police work, including additional investigation and surveillance, which corroborates the information from the tipster can combine to create the level of suspicion required for a *Terry* stop. *United States v. Brown*, 401 F.3d 588, 596 (4th Cir. 2005). *See also, Holloway*, 290 F.3d at 1338-39 (officers' personal observations corroborated a tip of gunfire and arguing at a residence).

The indicia of reliability and reasonableness of the search must be measured by what the officers knew before they conducted the search. *J.L.,* 529 U.S. at 271. The Court explained that anonymous tips are less reliable because, when nothing is known about an informant, authorities cannot assess the informant's reputation or hold the informant responsible if the tip turns out to be fabricated. *Id.* at 270. The Court was concerned that the anonymous tip that described only subject's "readily observable location and appearance . . .[would] help the police correctly identify the person whom the tipster meant to accuse. Such a tip, however, does not show that the tipster has knowledge of concealed criminal activity." *Id.* at 273. For these reasons, the

Court held that the officers lacked reasonable suspicion to stop the defendant. *See id.* at 274.

However, the Court noted that there are "situations in which an anonymous tip, suitably corroborated, exhibits 'sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" *Id.* at 270 (*quoting White*, 496 U.S. at 329). Here, the officer first determined to briefly detain the defendant based on a combination of factors. The initial, or triggering factor was the telephone call of a person shooting. That call was, in part, corroborated when Officer Perry was flagged down by a male on the street who indicated the direction the person with the gun had gone. Officer Perry observed the defendant in a multi-colored shirt. When Officer Perry tried to get the defendant to stop, the defendant instead started walking away from Perry, and Officer Perry observed the defendant throw a metal object into the field. The 911 tape reveals that Perry was out of breath as he relayed the request for a back-up officer, indicating that he had to run after the defendant. Although the defendant challenges the credibility of the officers, the Court **FINDS** their testimony to have been credible.

The defendant also challenges the *Terry* stop of the defendant on the basis that the officer did not have probable cause to stop him because he did not fit the description of the shooter. The basis for this assertion is that the tip was that the shooter was wearing a multi-colored white shirt, but the defendant's property did not include a multi-colored shirt, and that the officers described the defendant as having on a plaid jacket. If the only basis for the stop were the anonymous tip, the Court might reach another conclusion. However, here the tip, combined with the information provided by the individual in front of the tavern, plus the officer's own observations of the defendant's actions, including his walking or running away, and seeing him toss a metal object that appeared, and was later found to be a gun, all gave Officer Perry a sufficient basis for stopping and detaining the defendant.

Accordingly, after considering the totality of the circumstances, the Court **FINDS** that

7

there was probable cause to briefly stop and detain the defendant, and the defendant's motion to suppress evidence and statements is **DENIED** on all grounds.

**IT IS SO ORDERED.**

**DATED: January 26, 2007.**

**s/ WILLIAM D. STIEHL**
**DISTRICT JUDGE**